UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RANDY RUSSELL YBARRA,

    Plaintiff,

    v.                                CAUSE NO. 3:23-CV-171-JD

TRACY PACHECO,

    Defendants.

## OPINION AND ORDER

Randy Russell Ybarra, a prisoner without a lawyer, is proceeding in this case on two claims against Tracy Pacheco, an Administrative Assistant at Westville Correctional Facility ("WCF"), related to a Healthcare Request Form ("HCRF") he claims to have submitted to Pacheco on October 23, 2022. ECF 7. First, he is proceeding against Pacheco "for ignoring his October 23, 2022, healthcare request and refusing to schedule an appointment for his right hand in violation of the Eighth Amendment[.]" *Id.* at 6. Second, he is proceeding against Pacheco "for negligently ignoring his October 23, 2022, healthcare request and committing medical malpractice by refusing to schedule an appointment for his right hand in violation of Indiana law[.]" *Id.* Pacheco filed a motion for summary judgment, arguing she did not violate Ybarra's Eighth Amendment rights and the court should relinquish supplemental jurisdiction over Ybarra's state-law claim. ECF 43. Ybarra filed a response and Pacheco filed a reply. ECF 50, 51, 52, 53. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'"

2

*Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Where, as here, a plaintiff alleges a delay in providing medical care, the plaintiff must also produce "verifying medical evidence" that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth

3

Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"). Thus, an "action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *see also Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm").

Pacheco provides Ybarra's medical records and her own affidavit, which show the following facts: On October 19, 2022, Ybarra injured his right hand in an altercation with another inmate. ECF 45-2 at 97. At that time, Ybarra already had an active prescription for Tylenol. *Id.* at 82, 107. On October 20, 2022, Ybarra was taken to the WCF medical unit, where an x-ray was taken of his right hand and wrist. *Id.* at 82, 97, 106-07. The x-ray was "read as normal." *Id.* at 97.

Ybarra did not receive any medical treatment between October 20, 2022, and November 1, 2022. Pacheco attests Ybarra did not submit any HCRF during that time period. ECF 45-4 at 2. Ybarra attests he did submit a HCRF on October 23, 2022, in which he requested to see a doctor for hand pain and Pacheco responded he had just been seen and the x-ray showed his hand was not broken. ECF 50-3 at 1. Construing the facts in the light most favorable to Ybarra, the court accepts as true that Ybarra submitted a HCRF on October 23 and received a response from Pacheco.

4

On November 1, 2022, Ybarra was seen by Advanced Nurse Practitioner Marne Juestel-Ochs for his right hand and left knee. ECF 45-2 at 100-03.[1] Nurse Juestel-Ochs examined Ybarra's hand and noted the swelling had improved but the pain and range-of-motion had worsened. *Id.* at 100. She noted the previous x-ray of Ybarra's hand was "normal," but he'd shown no improvement since the x-ray. *Id.* She ordered a follow-up x-ray on Ybarra's hand to rule out osteomyelitis. *Id.* The second x-ray was performed later that day, which showed a displaced fracture at the base of the first metacarpal. *Id* at 97. Based on the November 1 x-ray results, Nurse Juestel-Ochs submitted an outpatient request on November 3 for Ybarra to see an offsite orthopedic specialist to further evaluate his hand injury. *Id.* at 96-99.[2] Ybarra continued to have an active prescription for Tylenol. *Id.* at 98. On November 8, 2022, Ybarra was seen by a nurse at WCF and received a splint for his right hand at the request of Nurse Juestel-Ochs. *Id.* at 91-93. On November 29, 2022, Nurse Juestel-Ochs submitted another outpatient request for Ybarra to see an offsite orthopedic specialist to evaluate his hand. *Id.* at 81-83. On December 12, 2022, before Nurse Juestel-Ochs received any response to this outpatient request, Ybarra was transferred from WCF to Indiana State Prison ("ISP"). *Id.* at 46-73. At the time of his transfer, Ybarra's right hand was in a splint and he continued to have an active prescription for Tylenol. *Id.* at 60-61. A nurse at ISP examined Ybarra and

---

[1] It is unclear from the record whether Pacheco was involved in scheduling this appointment.

[2] Ybarra's medical records do not indicate whether Nurse Juestel-Ochs ever received any response to this outpatient request. The request indicates "Centurion" is the responsible party, and there is no allegation or evidence that Pacheco was involved in processing or responding to this outpatient request.

5

noted medical personnel would continue to monitor his hand injury. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.

Pacheco argues summary judgment is warranted in her favor because she was not deliberately indifferent to Ybarra's serious medical need, as she did not receive or ignore any HCRF from Ybarra on October 23 and, regardless, the undisputed evidence shows Ybarra received constitutionally adequate medical care for his complaints. ECF 46 at 7-8. Ybarra responds that Pacheco "did not set appointment as her job to do" after he submitted his October 23 HCRF and he had to wait until his appointment with Nurse Juestel-Ochs on November 1 to receive treatment for his hand pain. ECF 50-3 at 1-2.

Here, construing the facts in the light most favorable to Ybarra, the court accepts as undisputed that Ybarra submitted a HCRF regarding his hand injury on October 23 which was received by Pacheco, and that Ybarra was forced to wait eight days until November 1 to receive any treatment. At the outset, Pacheco had a valid medical justification for concluding Ybarra did not require immediate medical treatment on October 23, as it is undisputed Ybarra received an x-ray of his hand on October 20 which was "read as normal." *See* ECF 45-2 at 97. Ybarra does not dispute the October 20 x-ray was "read as normal," and there's no evidence Pacheco knew or had any reason to know the October 20 x-ray results were erroneous. Therefore, because Pacheco knew Ybarra had just received an x-ray for his hand that was "read as normal" three days prior, no reasonable jury could conclude she exhibited "a total unconcern" for Ybarra's welfare by determining he did not need immediate medical treatment on October 23.

6

*See Stockton*, 44 F.4th at 615; *Robertson v. Moldenhauer*, No. 3:22-CV-750-GCS, 2025 WL 947893, at *6 (S.D. Ill. Mar. 28, 2025) (even if the physician's reading of the inmate's x-ray results "were a mistake, negligence, or malpractice, it would not be enough to constitute deliberate indifference"); *Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Moreover, even assuming Pacheco's response to the October 23 HCRF did exhibit "a total unconcern" for Ybarra's hand injury, Ybarra can only survive summary judgment by providing "verifying medical evidence" that Pacheco's eight-day delay in providing him medical treatment made his condition worsen or caused some degree of harm. *See Knight*, 590 F.3d at 466; *Williams,* 491 F.3d at 714-15. Ybarra raises two arguments in this regard.

First, Ybarra argues Pacheco's eight-day delay in providing him medical care for his hand injury caused him "unnecessary infliction of pain." ECF 50-3 at 2. However, the medical evidence in the record refutes, rather than verifies, this assertion. Specifically, it is undisputed Ybarra had an active prescription for Tylenol at the time of his October 19 hand injury. Once Ybarra saw Nurse Juestel-Ochs on November 1, she continued him on Tylenol and did not alter or prescribe him any new medications. Ybarra remained on Tylenol and was not prescribed any new medications throughout the duration of his stay at WCF. Therefore, because Ybarra was receiving Tylenol before he submitted his October 23 HCRF, and continued receiving Tylenol once he received treatment on November 1, there is no "verifying medical evidence" that Pacheco's

7

eight-day delay in scheduling Ybarra for medical care between October 23 and November 1 caused him to experience any unnecessary pain.

Second, Ybarra argues that once he was transferred to ISP on December 12, he was immediately taken to the emergency room and was told his injured hand was deformed and had incorrectly healed and he would need future surgery to correct his hand. ECF 50-3 at 2. But there are two issues with this argument. First, Ybarra was required to provide "verifying medical evidence" showing that Pacheco's delay caused him harm. Ybarra provides no "medical evidence" in support of this argument, but instead provides only hearsay testimony that an unnamed person told him his hand was deformed and had incorrectly healed. This is insufficient to create a genuine dispute. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (a party may not rely upon inadmissible hearsay testimony to oppose a motion for summary judgment). Second, even accepting as true that Ybarra's hand healed incorrectly between October 19 and December 12, there is no evidence that Pacheco's eight-day delay in scheduling him for an appointment with Nurse Juestel-Ochs was the cause of his hand healing incorrectly. It is undisputed that: (1) on November 1, Nurse Juestel-Ochs first examined Ybarra's hand and provided him a second x-ray; (2) on November 3, Nurse Juestel-Ochs submitted an outpatient request for Ybarra to see an orthopedic specialist; (3) on November 8, Ybarra received a splint for his hand; (4) on November 29, Nurse Juestel-Ochs submitted a second outpatient request for Ybarra to see an orthopedic specialist; and (5) neither of the outpatient requests submitted by Nurse Juestel-Ochs were

8

approved by Centurion before Ybarra was transferred to ISP on December 12.[3] Thus, Ybarra's medical records do not show Pacheco's eight-day delay in scheduling him to see Nurse Juestel-Ochs had any impact on the treatment he received at WCF. Therefore, accepting as true that Ybarra's hand healed incorrectly between October 19 and December 12, there is still no "verifying medical evidence" showing Pacheco's eight-day delay in scheduling him for a medical appointment with Nurse Juestel-Ochs was the cause of his worsened condition.

Accordingly, because the record contains (1) no evidence Pacheco exhibited "a total unconcern" for Ybarra's welfare in determining he did not require immediate medical treatment on October 23, and (2) no "verifying medical evidence" showing Pacheco's eight-day delay in scheduling Ybarra for medical treatment between October 23 and November 1 caused Ybarra any harm or caused his condition to worsen, no reasonable jury could conclude Pacheco violated Ybarra's Eighth Amendment rights. Summary judgment is therefore warranted in favor of Pacheco on Ybarra's Eighth Amendment claim.

Regarding Ybarra's state-law claim, Pacheco argues that because she is entitled to summary judgment on Ybarra's federal-law claim, the court should relinquish supplemental jurisdiction over Ybarra's state-law claim. ECF 46 at 8. In his response, Ybarra does not respond to this argument or otherwise address his state-law claim in any manner.

---

[3] There is no allegation or evidence that Pacheco was involved in or responsible for the delay in approving Nurse Juestel-Ochs' outpatient requests.

The court originally had supplemental jurisdiction over Ybarra's state-law claim because it arose from the "same case or controversy" as his federal claim. *See* 28 U.S.C. § 1367(a). Section 1367 provides that a federal court may decline to exercise supplemental jurisdiction over a state-law claim where the court has dismissed all the claims within its original jurisdiction. 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012) (quotation marks omitted); *see also Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns."). The presumption may be rebutted under three circumstances: "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Id.* at 480.

Here, dismissal of Ybarra's state-law claim to facilitate a state court filing is appropriate because no circumstances are present that warrant abandoning the presumption of relinquishing jurisdiction. First, there is no evidence the statute of

limitations has run on the pendent claim. *See* 28 U.S.C. § 1367 (providing that the statute of limitations for state-law claims "shall be tolled" while the state-law claim is pending in federal court). Second, sending the case to another court will not cause a substantial duplication of effort, as the parties' briefs do not address, and the court has not considered, the application of Indiana law to Ybarra's negligence claim. And third, because the issue has not been briefed by the parties, it is unclear how the state-law negligence claim will be decided. Making a determination whether Pacheco should be held liable for negligence under Indiana law implicates fundamental Indiana state law issues, which this court is hesitant to rule on when Indiana courts are adequately prepared to handle the case. Because neither party requests that this court retain jurisdiction over this claim, and the court sees no reason to retain jurisdiction, the court declines to retain jurisdiction under 28 U.S.C. § 1367. Ybarra may proceed to litigate his state-law negligence claim by refiling in state court.

    For these reasons, the court:

(1) GRANTS Pacheco's summary judgment motion (ECF 43); and

(2) DIRECTS the clerk to enter judgment in favor of Tracy Pacheco and against Randy Russell Ybarra and to close this case.

    SO ORDERED on September 10, 2025

                                        /s/JON E. DEGUILIO
                                        JUDGE
                                        UNITED STATES DISTRICT COURT